**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ELISHA RIGGLEMAN,                    )
                                     )
          Movant,                    )
                                     )
v.                                   )          **CIVIL ACTION NO. 5:14-03232**
                                     )          **(Criminal No. 5:11-00124)**
UNITED STATES OF AMERICA,            )
                                     )
          Respondent.                )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Movant's Motion to Vacate, Set Aside, or Correct Sentence by A Person in Federal Custody Pursuant to 28 U.S.C. § 2255 and Amended Section 2255 Motions (Document No. 422, 423, 426, 437, 455, 486), filed on January 21, 2014, January 31, 2014, March 7, 2014, October 23, 2015, February 22, 2017; (2) Movant's *pro se* Motions for Default Judgment (Document Nos. 442 and 443) filed on May 5, 2014 and July 11, 2014; and (3) Movant's *pro se* Motion for Voluntary Dismissal (Document No. 496). By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 212.) By Order entered on January 6, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 223.)

### FACTUAL AND PROCEDURAL BACKGROUND

A      **Criminal Action No. 5:11-00124:**

By Indictment filed on May 24, 2011, Movant was charged with one count of threatening

to kidnap and assault a Federal Bureau of Prisons law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) (Count One); and one count of threatening to murder and assault the wife and child of the officer in violation of 18 U.S.C. § 115(a)(1)(A) (Count Two). (Criminal Action No. 5:11-00124, Document No. 1.) On June 7, 2011, Movant appeared in person and by appointed counsel, Richard M. Gunnoe, for his Initial Appearance, Arraignment, and Detention Hearing. (Id., Document Nos. 9 and 10.) On June 6, 2011, Movant, by counsel, filed a Motion to Determine Mental Capacity and a "Motion to Continue Motion Deadlines and Trial Date." (Document Nos. 18 and 19.) By Order entered on July 7, 2011, United States District Judge Irene C. Berger granted Movant's "Motion to Continue Motion Deadlines and Trial Date." (Id., Document No. 22.) On July 13, 2011, United States Magistrate Judge R. Clarke VanDervort conducted a hearing on Movant's Motion to Determine Mental Capacity. (Id., Document No. 25.) Prior to consideration of the Motion to Determine Mental Capacity, Mr. Gunnoe presented to the Court Movant's *pro se* Motion to Appoint New Counsel and requested to withdraw a counsel. (Id., Document Nos. 24 and 26.) Magistrate Judge VanDervort granted the Motions to Withdraw as Counsel and to Appoint New Counsel, ordered that Kimberly G. Mann be appointed as new counsel, and ordered that the Motion to Determine Mental Capacity be held in abeyance. (Id., Document No. 26.)

On August 17, 2011, Movant filed his *pro se* Motion for Appointment of New Counsel regarding Ms. Mann and a Motion to Recuse or Dismiss Debbie Stevens as the Special Assistant United States Attorney ["SAUSA"]. (Id., Document Nos. 39 and 40.) On August 18, 2011, Movant filed his second *pro se* Motion for Appointment of New Counsel regarding Ms. Mann. (Id., Document No. 41.) Magistrate Judge VanDervort conducted a hearing on the above Motions on August 23, 2011. (Id., Document Nos. 42, 43, and 44.) During the hearing, Ms.

2

Mann noted that Movant had expressed at least six complaint concerning her ability to represent him and she believe the attorney-client relationship had deteriorated to the point that it would be difficult for her to represent him. (<u>Id.</u>, Document No. 44.) Magistrate Judge VanDervort granted Movant's Motions for Appointment of New Counsel and directed the Supervising CJA Panel Attorney to reassign the case to another member the Criminal Justice Act Panel of Attorneys. (<u>Id.</u>) Finally, Magistrate Judge VanDervort denied Movant's Motion to Recuse Special Assistant United States Attorney Debbie Stevens after explaining to Movant that Ms. Stevens is fully authorized to act as a Special Assistant United States Attorney. (<u>Id.</u>)

On August 24, 2011, S. Mason Preston was appointed as counsel for Movant. (<u>Id.</u>, Document No. 46.) On August 29, 2011 and September 9, 2011, Movant filed *pro se* Motions to Recuse Special Assistant United States Attorney Debbie Stevens (Document No. 28 and 61) and a Motion to Expedite Motion to Recuse Special Assistant United States Attorney Debbie Stevens (Document No. 47). On September 13, 2011, Magistrate Judge VanDervort conducted a hearing on Movant's Motion to Determine Mental Capacity of Defendant, the United States' Motion for Protective Order, and Movant's *pro se* Motions. (Document No. 63.) By Order entered on September 13, 2011, Magistrate Judge VanDervort granted Movant's Motion to Determine Mental Capacity (Document No. 18), denied as moot the United States' Motion for Protective Order (Document No. 32), denied Movant's *pro se* Motions to Recuse Special Assistant United States Attorney Debbie Stevens (Document No. 48 and 61), and denied as moot Movant's *pro se* Motion to Expedite (Document No. 47). (<u>Id.</u>, Document No. 63.) On September 21, 2011, Movant filed his *pro se* "Motion to Appeal to District Judge Motion to Recuse AUSA." (<u>Id.</u>, Document No. 67.) On September 22, 2011, Movant filed his *pro se* Motion for Ineffective Assistance of Counsel arguing that Mr. Preston did not adequately represent him during the

3

hearing conducted on September 13, 2011. (Id., Document No. 68.) On September 29, 2011, Movant, by counsel, filed a "Motion for Continuance." (Id., Document No. 69.) By Order entered on October 3, 2011, District Judge Berger granted Movant's "Motion for Continuance." (Id., Document No. 70.) By Memorandum Opinion and Order entered on October 11, 2011, District Judge Berger denied Movant's *pro se* Motion for Ineffective Assistance of Counsel after reviewing the record and determining that "Mr. Preston's performance was well above any objective standard of reasonableness." (Id., Document No. 71.)

On October 19, 2011, Movant filed the following *pro se* Motions: (1) Motion for Transcripts; (2) "Petition to Waive Mental Status Examination and Go Forth with Trial;" (3) Motion to Appoint New Counsel; and (4) "Motion for Franks Hearing." (Id., Document Nos. 75, 76, 78, and 79). By Order entered on October 25, 2011, Magistrate Judge VanDervort denied Movant's above *pro se* Motions after finding that Movant was "well represented by his current and third court-appointed attorney" and "Defendant has neither requested, nor received, permission to proceed *pro se*." (Id., Document No. 82.) Between October 31, 2011 and November 9, 2011, Movant filed the following *pro se* Motions: (1) Motion to Dismiss Indictment; (2) Motion to Present Respective Witness List; (3) Motion to Challenge the Veracity of Indictment; and (4) Motion to Appoint New Counsel. (Id., Document Nos. 86, 87, 91, and 92.) By Order entered on November 21, 2011, Magistrate Judge VanDervort denied Movant's *pro se* Motions to Dismiss Indictment, Motion to Present Respective Witness List, and Motion to Challenge the Veracity of the Indictment. (Id., Document No. 94.) Magistrate Judge VanDervort noted that the Court would consider Movant's *pro se* Motion to Appoint New Counsel (Document No. 92) upon completion of Movant's mental capacity evaluation. (Id.) Between December 13, 2011 and December 19, 2011, Movant filed the following *pro se* Motions: (1)

4

"Motion for Injunction;" (2) "Motion for a Neutral Independent Source for a Forensic Psychological Evaluation;" (3) "Motion for Second Opinion of the Psychological Evaluation due to Conflict and Personal Interest of the Psychologist;" (4) "Motion for Return of Personal Property;" and (5) "Motion for Second Independent Psychological Evaluation." (Id., Document Nos. 95 – 99.) By Order entered on December 20, 2011, Magistrate Judge VanDervort denied Movant's *pro se* Motions. (Id., Document No. 101).

By a six-count Superseding Indictment filed on December 20, 2011, Movant was charged with violating 18 U.S.C. § 115(a)(1)(A) and (B) as charged in Counts One and Two of the initial Indictment and further charging Defendant with disseminating and threatening to disseminate information that a witness was cooperating with the government in violation of 18 U.S.C. 1512(b)(1) (Count Three) and attempting to influence three witnesses to testify falsely in violation of 18 U.S.C. § 1512(b)(1) (Counts Four through Six). (Id., Document No. 102.) Movant's arraignment on the Superseding Indictment was conducted on February 7, 2012. (Id., Document Nos. 112 – 114.) A seven-count Second Superseding Indictment was filed on March 20, 2012, charging Movant as charged in Counts One and Two of the initial and Superseding Indictments, changing the statutory provision violated in Count Three to 18 U.S.C. § 1512(a)(2)(A) and charging four counts of conduct in violation of 18 U.S.C. 1512(b)(1). (Id., Document No. 122.) Movant's arraignment on the Second Superseding Indictment was conducted on April 3, 2012. (Id., Document Nos. 126 and 127.)

On April 24 and 25, 2012, Movant filed a *pro se* Motion to Appoint New Counsel and Recusal SAUSA Stevens. (Id., Document No. 135.) In support of his request for new counsel, Movant stated that Mr. Preston was not acting "zealously about his defense" and he "can't trust or have faith in [Mr. Preston's] representation." (Id.) By Order entered on April 25, 2012,

Magistrate Judge VanDervort denied Movant's above *pro se* Motions. (Id., Document No. 138.) Specifically, Judge VanDervort noted that Movant failed to show good cause for the appointment of new counsel, Movant was well represented by current counsel, and the case was on its fifth trial date. (Id.) On April 25, 2012, Movant filed a *pro se* "Motion for Dismissal of Indictment or for Discovery of All Incidents Written on Inmates for Threats at FCI Beckley 203 Rule Violation and for Proof of Legality of Special AUSA." (Id., Document No. 137.) On April 27, 2012, the United States filed a "Motion to Exclude the Defendant's Assertion of an Insanity Defense and Exclude the Introduction of Evidence Pertaining to Diminished Capacity of the Defendant to Control or Reflect Adequately upon the Consequences or Nature of his Actions." (Id., Document No. 143.) By Order entered on May 1, 2012, District Judge Berger denied Movant's *pro se* "Motion to Appeal Magistrate Judge's Decisions on Motion to Expedite and Motion to Recuse Assistance U.S. Attorney Debbie Stevens" (Document No. 55), "Motion to Appeal to District Judge Motion to Recuse AUSA" (Document No. 67), "Motion for Dismissal of Indictment or for Discovery of all Indictments Written on Inmates for Threats at FCI Beckley and for Proof of Legality of Special AUSA" (Document No. 137). (Id., Document No. 148.)

On May 2, 2012, District Judge Berger conducted a hearing on the United States' "Notice of Intent to Introduce Certain Evidence at Trial (Document No. 128) and "Motion to Exclude the Defendant's Assertion of an Insanity Defense and to Exclude the Introduction of Evidence Pertaining to the Diminished capacity of the Defendant to Control or Reflect Adequately upon the Consequences of Nature of his Actions" (Document No. 143). (Id., Document Nos. 144 and 150.) During the hearing, Movant, by counsel made an oral Motion for an Independent Mental Examination. (Id., Document No. 162.) On May 9, 2012, Movant filed a *pro se* "Motion to Object to the Denying of the Recusal of Special Counsel to the Government" and a *pro se*

"Motion for Special AUSA to Provide to Defendant as Part of Discovery as to Why a Special AUSA was Appointed in this Case." (Id., Document Nos. 153 and 154.) By Order entered on May 10, 2012, District Judge Berger denied Movant's foregoing *pro se* Motions. (Id., Document No. 156.) On May 15, 2012, Movant filed a *pro se* "Motion to Recuse Counsel and to Represent *Pro se* with Stand-by Counsel Appointed." (Id., Document No. 157.) On May 17, 2012, Movant filed a *pro se* Motion for FOIA Request. (Id., Document No. 158.) By Order entered on May 21, 2012, District Judge Berger (1) granted the United States' "Notice of Intent to Introduce Certain Evidence at Trial" to the extent the evidence would be used a rebuttal evidence (Document No. 128), (2) granted Movant's oral Motion for an Independent Mental Examination, and (3) held in abeyance the United States' "Motion to Exclude the Defendant's Assertion of an Insanity Defense and to Exclude the Introduction of Evidence Pertaining to the Diminished capacity of the Defendant to Control or Reflect Adequately upon the Consequences of Nature of his Actions" (Document No. 143). (Id., Document No. 162.) In granting Movant's Motion for an Independent Mental Examination, Judge Berger specifically ordered as follows:

> The Court **ORDERS** that the Defendant be examined by an independent psychologist and/or psychiatrist for purposes of determining criminal responsibility at the time of the alleged offense(s). Specifically, the Court **ORDERS** that the examiner assess whether or not there is any mental disease or defect which would preclude the Defendant from being able to formulate the necessary intent required to commit the crimes alleged in the Second Superseding Indictment.

(Id.)

By Orders entered on June 4, 2012, Magistrate Judge VanDervort denied Movant's *pro se* "Motion to Recuse Counsel and to Represent *Pro se* with Stand-by Counsel Appointed" (Document No. 157) and *pro se* Motion for FOIA Request (Document No. 158). (Id., Document Nos. 168 and 169.) In denying his *pro se* "Motion to Recuse Counsel and to Represent *Pro se*

with Stand-by Counsel Appointed," Magistrate Judge VanDervort noted that Movant was currently awaiting an independent mental examination and the Court could not "find that Defendant has knowingly, intelligently, and voluntary waived his right to counsel." (Id., Document No. 168.) On June 8, 2012, District Judge Berger conducted a Status Conference to address the status of the previously ordered independent psychological/psychiatric evaluation. (Id., Document No. 180.) Based upon representations made during the hearing, District Judge Berger ordered that Movant be transported by the USMS on June 18, 2012, to the South Central Regional Jail for an independent examination to be performed by Dr. Ralph Smith and employees of Charleston Psychiatric Group. (Id.) Finally, District Judge Berger ordered defense counsel to immediately notify the Court upon completion of the independent exam. (Id.)

Between June 20, 2012 and August 1, 2012, Movant filed the following *pro se* Motions: (1) "Petition for Motion that My Attorney File a Motion for Rough Notes of the Investigating Agent & All Background History of Any and All Expert Witnesses Used by the Gov. as Chief at Trial;" (2) "Motion to Obtain Knowledge of Rather or Not this Petitioner Waived His Right to a Speedy Trial;" (3) "Motion to Hold the Above Styled Case in Abeyance Pending the Outcome of Docket No. 12-1652 of the United States Supreme Court of Appeals for the Fourth Circuit;" (4) "Motion for Special Counsel for the Government to Provide to Defendant and to This Court a Brief that Reflects the Appointment of Special Counsel;" (5) "Motion for this Court to Stop the Tampering with this Petitioner's Mail and Legal Mail;" (6) "Motion to Review Discovery Before Trial and Pretrial Motions are Submitted;" and (7) "Motion for Subpoena/Summons." (Id., Document Nos. 183-86, and 195-97.) By Order entered on August 2, 2012, Magistrate Judge VanDervort denied the foregoing *pro se* Motions. (Id., Document No. 198.)

By unpublished opinion entered on July 23, 2012, the Fourth Circuit Court of Appeals

8

denied Movant's petition for writ of mandamus seeking an order directing that SAUSA Stevens be recused. (<u>Id.</u>, Document Nos. 187, 188, 189.) By Order entered on July 30, 2012, District Judge Berger direct the parties to notify the Court of the status of the independent exam. (<u>Id.</u>, Document No. 190.) On the same day, the United States responded that Movant returned to FCI Beckley on July 18, 2012, but the Government had not received a report of the findings of the independent examination. (<u>Id.</u>, Document No. 191.) Between August 8, 2012 and August 15, 2012, Movant filed the following *pro se* Motions: (1) "Motion for Discovery Documents;" (2) "Motion for Issuance of Subpoenas;" (3) "Motion for the Government to Disclose a Timely Disclosure of the Following Brady Material;" (4) "Motion for Disclosure;" and (5) "Motion for FOIA Disclosure." (<u>Id.</u>, Document Nos. 200-04.) On August 13, 2012, Charleston Psychiatric Group prepared its independent evaluation report concerning Movant. (<u>Id.</u>, Document No. 210.) By Order entered on August 16, 2012, Magistrate Judge VanDervort denied Movant's foregoing *pro se* Motions. (<u>Id.</u>, Document No. 206.) By Order entered on August 20, 2012, District Judge Berger granted the United States' "Motion to Exclude the Defendant's Assertion of an Insanity Defense and to Exclude the Introduction of Evidence Pertaining to the Diminished Capacity of the Defendant to Control or Reflect Adequately upon the Consequences or Nature of his Actions (Document No. 143). (<u>Id.</u>, Document No. 211.)

On August 16, 2012, the United States filed a "Motion for an Anonymous Jury." (<u>Id.</u>, Document No. 207.) In support, the United States noted the following: (1) Movant's multiple attempts to interfere with the judicial process by seeking the injury and/or death of witnesses/victims, offering of bribes to have harm carried out, and offering bribes to witnesses to testify falsely; (2) Movant's criminal history including convictions for mailing threatening communications; (3) The fact that the statutory maximum sentence in the case exceeds 100

years; and (4) A measure of security is warranted to protect the jurors' names, home addresses, and work addresses. (Id.) On August 21, 2012, Movant, by counsel, filed his Response stating no objection to keeping the identity of the jurors concealed, but requesting that Movant be provided with background information on each potential juror and that the jury panel not be informed of the reason for the anonymous jury. (Id., Document No. 212.) By Order entered on August 21, 2012, District Judge Berger granted the United States' "Motion for Anonymous Jury." (Id., Document No. 213.) Specifically, District Judge Berger directed as follows:

> The Court **DIRECTS** the Clerk to redact the name, address, place of employment, and other personally identifiable information from the jury questionnaires. However, the city of residence, occupation, age, sex, marital status and other information, which does not disclose the identity or potential location of the juror(s) or members of their families, shall not be redacted from the jury questionnaires. Finally, the Court **ORDERS** that neither the Clerk nor any other party inform the jury panel of the reason for the anonymous jury.

(Id.)

On August 24, 2012, Movant filed a *pro se* Motion for Continuance of Trial and Motion for Appointment of Counsel. (Id., Document Nos. 215 and 216.) On August 27, 2012, Movant appeared in person and by counsel, Mr. Preston, for trial as previously scheduled in the case. (Id., Document Nos. 218 - 220.) Mr. Preston, however, advised the Court of medical issues and requested that he be removed as counsel. (Id.) District Judge Berger granted Mr. Preston's oral Motion to Withdraw, ordered that Movant's trial be continued, and directed the Supervising CJA Panel Attorney to reassign this case to another member of the CJA Panel. (Id.) By Order entered the same day, District Judge Berger denied as moot Movant's *pro se* Motion for Continuance of Trial and Motion for Appointment of Counsel (Document Nos. 215 and 216). (Id., Document No. 221.) On September 4, 2012, Gregory J. Campbell was appointed as counsel. (Id., Document No. 224.)

10

On September 10, 2012, Movant filed a *pro se* Motion for Judicial Review of FOIA. (Id., Document No. 225.) On September 13, 2012, Movant filed a *pro se* Motion to have New Appointed Attorney File Pretrial Motions and Suppression/Impeachment Motions. (Id., Document No. 227.) Movant, by counsel, filed a Motion to Continue Trial on September 26, 2012, which was granted by the District Court on September 27, 2012. (Id., Document Nos. 229 and 230.) On November 28, 2012, Movant filed a *pro se* Motion for Recusal of Debbie Stevens as Special United States Attorney and a *pro se* Motion to Appoint New Counsel. (Id., Document Nos. 234 and 235.) As grounds for his request for the appointment of new counsel, Movant complained the Mr. Campbell refused to seek the recusal of SAUSA Debbie Stevens. (Id.) On November 28, 2012, Movant filed in the Fourth Circuit a Petition for Writ of Prohibition requesting that the above criminal proceedings be dismissed or that a new Special Assistant United States Attorney be appointed. (Id., Document No. 237.) By Order entered on November 29, 2012, Magistrate Judge VanDervort denied Movant's *pro se* Motion for Recusal of Debbie Stevens as Special United States Attorney and his *pro se* Motion to Appoint New Counsel. (Id., Document No. 241.)

On December 13, 2012, Movant filed the following *pro se* Motions: (1) Motion to Dismiss Indictment for Violation of the Federal Speedy Trial Act (Document No. 247); (2) Motion to Continue Trial (Document No. 248); and (3) Motion to Recuse Magistrate Judge VanDervort (Document No. 249). On December 18, 2012, Movant filed a *pro se* letter-form Motion to Disqualify Special AUSA Stevens. (Id., Document No. 252.) By Order entered the same day, Magistrate Judge VanDervort scheduled a hearing on the Motion after noting that he had repeatedly received letters and motions from Movant insisting that SAUSA Debbie Stevens was not qualified and does not have authority to represent the United States in prosecuting him.

11

(Id., Document No. 251.) By Order entered on December 19, 2012, District Judge Berger denied Movant's *pro se* Motion to Dismiss Indictment for Violation of the Federal Speedy Trial Act (Document No. 247), Motion to Continue Trial (Document No. 248), Motion to Recuse Magistrate Judge VanDervort (Document No. 249). (Id., Document No. 253.) On December 27, 2012, Mr. Campbell filed a Motion to Adopt certain *pro se* Motions filed by Movant. (Id., Document No. 254.) On January 3, 2013, Movant filed a *pro se* "Motion to Suppress All Evidence Put Together by (SAUSA) Debbie H. Stevens." (Id., Document No. 258.) On January 8, 2013, Mr. Campbell filed a Second Motion to Adopt certain portions of Movant's *pro se* "Motion to Suppress All Evidence Put Together by (SAUSA) Debbie H. Stevens." (Id., Document No. 270.) On January 8, 2013, Magistrate Judge VanDervort conducted a hearing on Movant's pending Motions concerning the alleged improper prosecution of Movant by SAUSA Stevens. (Id., Document No. 272.) By Memorandum Opinion and Order entered on January 9, 2013, Magistrate Judge VanDervort determined that Ms. Stevens was qualified to represent the United States in the underlying criminal proceedings. (Id., Document No. 271.) Magistrate Judge VanDervort further noted that the Office of the United States Attorney had filed documents evidencing Ms. Stevens appointed as a Special Assistant United States Attorney for the period of time from March 20, 2004, through March 15, 2013. (Id., Document Nos. 256 and 271.) Accordingly, Magistrate Judge VanDervort denied as moot Movant's Motion for Judicial Review of FOIA (Document No. 225), denied Movant's Motions asserting that Ms. Stevens was not qualified to represent the United States (Document Nos. 227, 249, 252, and 258), and recommended that the District Court deny Movant's Motion to Dismiss Indictment for Violation of the Federal Speedy Trial Act (Document No. 247). (Id., Document No. 271.)

On January 14, 2013, Movant filed a *pro se* Motion for Ineffective Assistance of Counsel

(Id., Document No. 273.) On January 15, 2013, the United States filed a "Motion to Dismiss Without Prejudice Counts Four, Five, and Six of the Second Superseding Indictment." (Id., Document No. 275.) By Order entered on January 16, 2013, District Judge Berger granted the United States' "Motion to Dismiss Without Prejudice Counts Four, Five, and Six of the Second Superseding Indictment." (Id., Document No. 282.) By unpublished opinion entered on January 22, 2013, the Fourth Circuit denied Movant's petitions for a writ of prohibition seeking an order directing that his criminal case be dismissed. (Id., Document Nos. 291, 292, and 293.) During the Detention Hearing conducted on January 23, 2013, Movant filed the following *pro se* Motions: (1) Waiver of Attorney and Motion to Proceed *Pro se*; (2) "Motion to Appoint Another Counsel Due to Conflict of Interest and That a Client and Attorney Relationship Cannot be Established;" (3) "Motion for Government/SAUSA Stevens to Produce Further Evidence of Enforce Letters and Appointment Affidavits;" (4) "Motion to Compel Attorney/Government to Disclose Evidence Favorable to Defendant Such as Laws and Statutes;" (5) "Motion to Suppress Evidence and Impeach SAUSA;" (6) "Motion for Defense Attorney Greg J. Campbell to Provide to this Petitioner a Copy of Any and All Plea Bargains Provided by SAUSA Debbie Stevens;" (7) "Motion for Disclosure of Agreements Between Government and Government Witnesses;" (8) "Motion to Produce All Names and Addresses of Persons Expected to be Called as Witnesses;" (9) "Motion to Require the Government to Reveal Any Agreement, Concession, and Grant Immunity;" (10) "Motion to Represent *Pro se*;" (11) "Motion for Interlocutory Appeal on Motion for Judicial Review of FOIA;" and (12) "Motion to Subpoena Witnesses and Records and Character Witnesses." (Id., Document No. 297 – 308, 310.) After hearing arguments from Movant, Magistrate Judge VanDervort denied Movant's Motion for Ineffective Assistance of Counsel (Document No. 273). (Id., Document No. 310.)   By Order entered on January 24, 2013,

13

District Judge Berger denied Movant's *pro se* "Motion for Interlocutory Appeal on Motion for Judicial Review of FOIA" (Document No. 307). (Id., Document No. 312.) On January 24, 2013, Movant filed his *pro se* Motion to Continue Trail. (Id., Document No. 315.)

On January 25, 2013, Movant pled guilty to one count of Threatening to Kidnap and Assault a Federal Officer in violation of 18 U.S.C. § 115(a)(1)(B) (Count One). (Id., Document Nos. 320 – 322.) By Order entered on the same day, Magistrate Judge VanDervort denied as moot Movant's pending *pro se* Motions (Document Nos. 297 – 307). (Id., Document No. 324.) On February 19, 2013, Movant filed his *pro se* "Motion to Vacate Plea Bargain or Get a More Definite State of Stevens SAUSA Appointment." (Id., Document No. 339.) By Order entered on the same day, District Judge Berger denied Movant's foregoing *pro se* Motion. (Id., Document No. 340.) On March 8, 2013, Movant filed a "Declaration" stating that the letter her wrote to the federal officer was merely a hoax. (Id., Document No. 351.) A Presentence Investigation Report was prepared. (Id., Document No. 382.) The District Court determined Movant had an Base Offense Level of 12, and a Total Offense Level of 24, the Court having applied the following: A six-level enhancement pursuant to U.S.S.G. § 3A1.2(b); A two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice; and An enhancement to an adjusted offense level of 24 pursuant to U.S.S.G. § 4B1.1 because Movant met the criteria for career offender status. (Id., pp. 27 - 28.) The District Court sentenced Movant on May 23, 2013, to serve a 120-month term of incarceration to be followed by a three-year term of supervised release.[1] (Id., Document Nos. 380.) The District Court further imposed a $100 special assessment. (Id.)

---

[1] The District Court determined that Movant was subject to the advisory guideline range of 100 to 120 months. (Criminal Action No. 5:11-00124, Document No. 381.) The District Court sentenced Movant at the top of the Guideline Range. (*Id.*)

On May 31, 2013, Movant filed a Notice of Appeal. (Id., Document No. 383.) In his appeal, Movant argued as follows: (1) The District Court erred in denying Movant credit for acceptance of responsibility under the Sentencing Guidelines; (2) The Magistrate Judge erred in denying Movant's motions seeking the disqualification of the Special Assistant United States Attorney; and (3) The District Judge was not neutral or impartial. (Id., Document No. 414.); United States v. Riggleman, 544 Fed.Appx. 175 (4th Cir. 2013). On October 24, 2013, the Fourth Circuit Court of Appeals affirmed in part and dismiss in part Movant's appeal. Id. Specifically, the Fourth Circuit (1) dismissed Movant's challenge to his sentence after determining that Movant's appeal waiver was knowingly and intelligently; (2) dismissed Movant's challenge to the Magistrate Judge's decision after determining that Movant waived appellate review of this issue by failing to appeal the Magistrate Judge's decision to the District Court; and (3) affirmed the District Court's decision to the extent Movant argued that the District Court was not neutral or impartial. Id. The United States Supreme Court denied Movant's petition for writ of certiorari on March 10, 2014. Riggleman v. United States, ___ U.S. ___, 134 S.Ct. 1525, 188 L.Ed.2d 458 (2014).

**B.    Section 2255 Motion:**

On January 21, 2014, Movant, acting *pro se*, filed his instant "Writ of Habeas Corpus 28 § 2255" and "Amended Petition to 28 § 2255 Habeas Corpus."[2] (Civil No. 5:14-03232, Document No. 422 and 423.) As grounds for *habeas* relief, Movant argues he is initial Section 2255 Motion as follows: (1) Involuntary plea; (2) Ineffective assistance of counsel; (3) Violation of his right to due process; (4) Violation of his Sixth Amendment right to confront witnesses

---

[2] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed

against him; (5) Actual innocence; and (5) Improperly determined to be a career offender under the United States Sentencing Guidelines. (Id.)

On January 31, 2014, Movant filed his "Writ for Habeas Corpus 28 U.S.C. § 2255" asserting nearly identical claims as asserted in his "Amended Petition to 28 § 2255 Habeas Corpus" (Document No. 422). (Id., Document No. 426.) On March 7, 2014, Movant filed his second Amended Section 2255 Motion. (Id., Document No. 437.) In his Amended Section 2255 Motion, Movant appears to argue that Attorney Kim Mann, S. Mason Preston, and Greg Campbell were ineffective in failing to pursue or adopt his *pro se* motions. (Id., pp. 1 – 4.) Next, Movant complains that Mr. Campbell was ineffective when he did "nothing but agree with the court when the judge denied this petitioner the acceptance of responsibility." (Id., pp. 2 and 13.) Movant then continues to assert similar arguments as those set forth in his prior Section 2255 Motions. (Id., pp. 5 – 14.)

On May 5, 2014 and July 11, 2014, Movant filed Motions for Default Judgment. (Id., Document Nos. 442 and 443.) In support, Movant argues that the United States has not responded to his Section 2255 Motions and "it has been over a period of 90 days from the time of service." (Id.) Thus, Motion requests that he be released from confinement. (Id.)

On October 23, 2015, Movant filed his third Amended Section 2255 Motion and Exhibits in Support. (Id., Document No. 455.) First, Movant argues that he was improperly classified as a career offender based upon the recent Johnson decision. (Id., pp. 1 – 5.) Movant continued to assert similar argues as those set forth in his prior Section 2255 Motions. (Id.) By Order entered on June 14, 2016, the Court appointed the Federal Public Defender to represent Movant to determine whether Movant may qualify for relief under Section 2255 in light of Johnson "and to

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

present any petitions, motions, or applications relating thereto to the Court for disposition."[3] (Id., Document No. 461.) By Order entered on August 12, 2016, the undersigned directed appointed counsel to file any supplemental brief in support of Movant's Section 2255 Motion by September 2, 2016, and directed the United States to file its Answer by September 30, 2016. (Id., Document No. 469.)

On September 12, 2016, following the granting of an extension of time, Movant, by court-appointed counsel, Federal Public Defender Christian M. Capece and Assistant Federal Public Defender Rachel E. Zimarowski, filed his "Supplemental Memorandum in Support of Motion to Correct Sentence Under 28 U.S.C. § 2255." (Id., Document No. 472.) In support of his Motion, Movant alleges that he is entitled to relief based upon the United States Supreme Court's decision in Johnson v. United States, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). (Id.) Movant argues that under Johnson, Movant "is no longer a career offender because his conviction for threatening a federal official and his three prior convictions for mailing threatening communications and burglary no longer qualify as crimes of violence under any portion of the career definition." (Id.) In support, Movant explains that in Johnson, the Supreme Court held that the residual clause of the Armed Career Criminal Act ["ACCA"] was unconstitutionally vague. (Id.) Movant, therefore, argues that "[i]t follows that the identical residual clause in the career offender provision, U.S.S.G. § 4B1.2(a)(2), is also void for vagueness." (Id.) Thus, Movant concludes that his convictions do not trigger the application of the Section 4B1.1 career offender enhancement. (Id.) Movant argues that his convictions do not qualify as crimes of violence under the enumerated offenses or the force clause of the career

---

[3] The Order further stated that "[c]ounsel's representation pursuant to this appointment is limited to *Johnson* relief unless the presiding District Judge directs otherwise. (Civil Action No. 5:14-03232, Document No. 461.)

offender provision. (Id.) Movant, therefore, contends that "in light of *Johnson*, [he] no longer qualifies as a career offender, and his current sentence violates due process of law in violation of 28 U.S.C. § 2255(a)." (Id.)

On November 7, 2016, the United States filed its Response to Movant's Section 2255 Motions. (Id., Document No. 476.) First, the United States argues that Movant "has the burden of proving that he is entitled to resentencing based on the Johnson claims in his § 2255 Motion." (Id., pp. 12 – 14.) The United States next argues that as to Movant's Johnson and career offender claims, such should be dismissed based upon the following: (1) Movant's plea agreement knowingly and voluntarily waived collateral attack of his sentence. (Id., pp. 15 – 19.); (2) Movant's Johnson-related claims were not timely filed and his § 2255 cannot be amended (Id., pp. 19 – 30); (3) Movant's "new claims are a successive motion" (Id., pp. 30 - 31.); and (4) Movant "procedurally defaulted his claims and has not demonstrated good cause to excuse his default" (Id., pp. 31 – 33.). Fourth, the United States argues that Johnson does not apply on collateral review to Guideline issues. (Id., pp. 33 – 39.) Fifth, the United States argues that Movant crimes are "crimes of violence." (Id., pp. 39 – 65.) Finally, as to Movant's remaining claims that are unrelated to Johnson, the United States argues as follows: (1) Movant "has waived his right to collaterally attack his conviction and sentence" (Id., pp. 67 – 70.); (2) Movant's "voluntary waiver and plea waives all claims relating to non-jurisdiction error" (Id., pp. 70 – 71.); (3) Movant's "claims raised on appeal have already been adjudicated, and failure to bring his remaining claims on direct appeal waives those claims" (Id., pp. 72 – 74.); and (4) Movant "did not received ineffective assistance of counsel" (Id., pp. 74 – 82.); and (5) Movant "cannot now raise claims of any alleged constitutional errors regarding any alleged violation of defendant's due process rights" (Id., pp. 82 – 83.).

As Exhibits, the United States attaches the following: (1) A copy of the transcripts from Movant's Sentencing Hearing conducted on May 23, 2013, in the underlying criminal action (Id., Document No. 476-1.); (2) A copy of Movant's "Opening Brief of Appellant" as filed by Mr. Campbell in the Fourth Circuit Court of Appeals (Id., Document No. 476-2.); (3) A copy of a letter from the United States Supreme Court stating that Movant's petition for writ of certiorari had been denied as to the underlying criminal action (Id., Document No. 476-3.); (4) A copy of the transcripts from Movant's Plea Hearing conducted on January 25, 2013 in the underlying criminal action (Id., Document No. 476-4.); (5) A copy of Movant's Indictment as filed in the Southern District of West Virginia in Case No. 2:04-cr-0048 (Id., Document No. 476-5.); (6) A copy of Movant's signed "Written Plea of Guilty" as filed in the Southern District of West Virginia in Case No. 2:04-cr-00048 (Id., Document No. 476-6.); (7) A copy of Movant's Plea Agreement as entered in the Southern District of West Virginia in Case No. 2:04-cr-00048 (Id., Document No. 476-7.); (8) A copy of the transcripts from Movant's Plea Hearing as conducted in the Southern District of West Virginia on June 24, 2004 in Case No. 2:04-cr-00048 (Id., Document No. 476-8.); (9) A copy of Movant's Indictment as filed in the Northern District of West Virginia in Case No. 2:06-cr-23 (Id., Document No. 476-8); and (10) A copy of a letter from the United States' Attorney Office regarding Movant' plea of guilty in the Northern District of West Virginia in Case No. 2:06-cr-23 (Id., Document No. 476-10.).

On February 22, 2017, Movant filed his *pro se* "Amended to Counterclaim of Petitioner's claim of the Gov't Counterclaim of Petitioner Habeas Corpus." (Id., Document No. 486.) Movant concludes that result of the proceeding would have been different if Mr. Campbell "would have adopted all of the *pro se* motions filed by this petitioner as requested and if counsel Greg Campbell would have researched the letter that was sent to Judge Berger, filed 1/28/13,

Document No. 329." Next, Movant continues to contend that his underlying offense was not eligible for the career offender enhancement and he was improperly denied a sentencing reduction for acceptance of responsibility. (Id.)

On the same day, Movant filed his *pro se* "Counter Response to the U.S. Gov't Response." (Id., Document No. 487.) First, Movant argues the United States failed to explain why a SAUSA was necessary for his prosecution. (Id.) Movant continues to argue that he was denied due process because he was never allowed to challenge the assignment of an SAUSA to his case. (Id.) Next, Movant contends that he is innocent of the underlying offense because the letters he mailed were only a hoax. (Id.) Third, Movant argues that the Court erred in denying him a sentencing reduction for acceptance of responsibility where Movant pled guilty. (Id.) Fourth, Movant contends that the Court erred in sentencing Movant as a career offender under the U.S.S.G. (Id.) Fifth, Movant argues that his waiver of appeal "did not waive the right to a habeas 2255 when the Judge is impartial, and his attorney did not inform me or advise me correctly." (Id.) Movant further argues that he pled guilty to the "crime, not the enhancement." (Id.) Sixth, Movant states that he is "fighting this case saying that the plea bargain was legal, but the added enhancement should not have even came into play." (Id.) Seventh, Movant continues to argue that District Judge Berger was "very impartial." (Id.) Finally, Movant continues to argue that Mr. Campbell was ineffective in failing to adopt his *pro se* motions. (Id.)

Movant, by counsel, filed his Reply concerning his Johnson claim on February 22, 2017. (Id., Document No. 488.) First, Movant asserts that he "has no burden of production or persuasion to show that the District Court previously relied upon the residual clause in U.S.S.G. § 4B1.2 in order to obtain 28 U.S.C. § 2255 relief from an unlawfully imposed sentence." (Id., pp. 1 – 5.) Second, Movant argues that the "waiver provision of [Movant's] plea agreement does

not bar him from seeking relief under *Johnson* because a sentence imposed in an unconstitutional manner is outside the scope of the waiver." (<u>Id.</u>, pp. 5 – 8.) Third, Movant contends that his "Johnson claim is timely under 28 U.C.S. § 2255(f)(3)." (<u>Id.</u>, pp. 8 – 10.) Fourth, Movant states that he "meet the Reed v. Ross cause and prejudice standard and his motion is not procedurally defaulted." (<u>Id.</u>, pp. 10 – 12.) Fifth, Movant claims that his "convictions for threatening a federal official and mailing threatening communications no longer qualify as crimes of violence under the Guidelines." (<u>Id.</u>, pp. 13 – 21.)

On April 5, 2018, Movant filed his *pro se* Motion for Voluntary Dismissal. (<u>Id.</u>, Document No. 496.) In support, Movant states that his "motion is mainly due to the fact that there is a Black Judge presiding over this case and I'm a very racist white man." (<u>Id.</u>) Movant further appears to acknowledge that he is not entitled to relief under <u>Johnson</u>. (<u>Id.</u>) Finally, Movant continues to argue that he was subjected to ineffective assistance of counsel. (<u>Id.</u>) Movant, however, states that he is "sure" his ineffective assistance of counsel claim will fail due to bias by the District Judge. (<u>Id.</u>)

## ANALYSIS

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to be cognizable under Section 2255, claims based on other than constitutional or jurisdictional grounds must present exceptional circumstances that justify permitting a collateral attack. Stated another way, the alleged error must amount to "a fundamental defect

which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Section 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Accordingly, errors warranting a reversal on direct appeal will not necessarily support a collateral attack. Knight v. United States, 37 F.3d 769, 772 (1st Cir.1994). See United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Failure to raise an issue presented in sentencing on direct appeal which is non-constitutional in nature amounts to a waiver of the right to contest the issue in Section 2255 proceedings. See United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989).

With respect to issues which are constitutional in nature, absent a showing of good cause for and prejudice from failing to appeal as may be shown by a defendant in criminal proceedings, Section 2255 is no substitute, and the failure precludes Section 2255 review. Theodorou v. United States, 887 F.2d 1336, 1339-40 (7th Cir. 1989)("[A]bsent a showing of cause and prejudice, a defendant is barred from raising any constitutional challenge in a section 2255 proceeding which could have been raised on direct appeal."); See also United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), cert. denied, 517 U.S. 1161, 116 S.Ct. 1555, 134 L.Ed.2d 657 (1996). The standard is conjunctive. As a general matter, therefore, movants must show good cause for and prejudice from their failure to raise any constitutional issues advanced under Section 2255 on direct appeal. See Theodorou, supra, 887 F.2d at 1340. Constitutional claims of ineffective assistance of counsel are the exception. They are more properly raised in Section 2255 proceedings and not on direct appeal. United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096, 120 S. Ct. 837, 145 L.Ed.2d 704 (2000).

Furthermore, a movant may not reassert a claim decided on direct review. In

Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." An exception exists, however, when there has been an intervening change in the law which justifies consideration of a prior determination. See Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974).

1.    **Movant's _Pro Se_ Motions for Default Judgment:**

On May 5, 2014 and July 11, 2014, Movant filed Motions for Default Judgment. (Id., Document Nos. 442 and 443.) In support, Movant argues that the United States has not responded to his Section 2255 Motions and "it has been over a period of 90 days from the time of service." (Id.) Thus, Motion requests that he be released from confinement. (Id.)

The United States Supreme Court has adopted Rules Governing Section 2255 Proceedings. Rule 4 of the Rules Governing Section 2255 Proceedings provide that if a Section 2255 Motion is not dismissed upon preliminary review, the Court "must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the _habeas_ rules, may be applied to Section 2255 proceedings. Rule 55 of the Federal Rules of Civil Procedures provide that "default judgment may be entered against the United States . . . only if the claimant establishes a claim or right by evidence that satisfies the court." Fed. R. Civ. P. 55(d). Thus, the district court must make a finding regarding the merits of the underlying claim. Borzeka v. Heckler, 739 F.2d 444, 446 (9th Cir. 1984); Lee v. Federal Emergency Mgmt. Agency, 2010 WL 1027124, * 7 (S.D.W.Va. Feb. 26, 2010)("The

23

mere failure of an agency of the United States to respond . . . does not suffice to establish a claim or right to relief."), *recommendation adopted*, 2010 WL 1027050 (S.D.W.Va. March 17, 2010)(J. Faber).

The undersigned declines to apply default judgment procedures to the above *habeas* proceedings. "There is no provision in the Rules Governing Section 2255 Proceedings for default judgments against respondents for missing response deadlines, and given the *sui generis* nature of such proceedings and the public interest involved in section 2255 cases, it would be improper to enter default judgment in favor of a state or federal prisoner based on a missed deadline, especially . . . where [the] petitioner has not been prejudiced . . ." United States v. Demelio, 2009 WL 145949, * 1 (W.D.Pa. Jan. 21, 2009); also see United States v. Manriques, 2013 WL 5592191 (M.D.N.C. Oct. 10, 2013)(declining to apply default judgment to Section 2255 proceedings); United States v. Scantland, 2010 WL 6571943, * 4 (E.D.Mich. Dec. 7, 2010)("Unlike an ordinary civil case, a habeas corpus proceeding implicates interests beyond those of the parties, and thus default judgment is inappropriate."); Mooney v. United States, 2009 WL 2929335, * 4 (D.S.C. Sept. 8, 2009)("[C]ourts do not enter default judgments in favor of habeas petitioners without reaching the merits of the claim as a matter of policy due to the risk of releasing prisoners who have been duly convicted and the costs involved with retrial."). Furthermore, Movant is not entitled to default judgment even assuming Rule 55 could apply to the above *habeas* proceedings. At the time of Movant's filing of the above Motions for Default, the United States had not yet been ordered by the Court to file a response to Movant's Section 2255 Motions. Thus, the United States has not failed to properly respond to Movant's Section 2255 Motions. Accordingly, the undersigned respectfully recommends that Movant's Motions for Default be denied.

2.    __Movant's *Pro se* Motion for Voluntary Dismissal__:

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a Movant may voluntarily dismiss an action without a Court Order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Rule 41(a)(1)(B) states in pertinent part, as follows:

> Unless the notice of dismissal or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal – or state – court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of the Rule respecting voluntary dismissal "is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Ellett Brothers, Inc. v. U.S. Fidelity & Guaranty Co., 275 F.3d 384, 388 (4th Cir. 2001); also see Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D.W.Va. Sep. 12, 2003). In considering a Motion under Rule 41(a)(2), the District Court should consider the following relevant, but non-dispositive, factors: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Id. These factors are not exhaustive, and no factor should be given weight over another. Gross v.

Spies, 133 F.3d 914 (4th Cir. 1998)(citing Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997).

In consideration of the above factors, the undersigned finds that Movant's Motion for Voluntary Dismissal should be denied. In consideration of the first and fourth factors, the undersigned notes the United States has filed a Response to Movant's Section 2255 Motions. The record supports a finding that the United States has spent a considerable amount of time and expense on this case. As set forth above, Movant asserts numerous grounds for relief. The United States addressed each ground in its lengthy Response totaling 85 pages. (Civil Action 5:14-03232, Document No. 476.) Thus, there has been extensive preparation by the United States in the above case. At the present stage of the litigation, the undersigned finds that the United States would be substantially prejudiced by the voluntary dismissal of Movant's Section 2255 Motions.

Considering the second factor, the undersigned notes that there has been no excessive delay or lack of diligence on the part of Movant. Considering the third factor, Movant has provided an insufficient explanation of the need for a dismissal. Movant's request for dismissal is based upon racist remarks. (Civil Action No. 5:14-03232, Document No. 496.) Movant speculates that his Section 2255 action will be unsuccessful due to the District Judge's alleged bias against Movant. As stated below, Movant's conclusory allegations of bias by the District Judge is unsupported and without merit. Based upon the foregoing, the undersigned respectfully recommends that Movant's Motion requesting voluntary dismissal of this action be denied.

**3.    Johnson Claim:**

In the instant case, Movant argues that he is entitled to relief based upon Johnson. In Johnson v. United States, ___ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), the United

States Supreme Court held that the "residual clause" of the Armed Career Criminal Act ["ACCA"] was unconstitutionally vague and "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." Johnson, ___ U.S. at ___, 135 S.Ct. at 2555-63. The ACCA provides for enhanced penalties for those with three qualifying prior felony convictions for either serious drug offenses or "violent felonies." The ACCA defines a "violent felony" as a crime punishable by imprisonment for a term exceeding one year " that - - (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii)(emphasis added). The italicized portion above is known as the ACCA's "residual clause." The Supreme Court determined the ACCA's "residual clause" to be unconstitutionally vague because its application was too "wide-ranging" and "indeterminate." Id. On April 18, 2016, the United States Supreme Court determined that Johnson announced a new substantive rule that applies retroactively to cases on collateral review. Welch v. United States, ___ U.S. ___, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016).

In the instant case, Movant does not contend that he was sentenced under the ACCA. Movant, however, argues that Johnson should be extended to career offenders sentenced under the "residual clause" of the Guidelines. Movant was sentenced as a career offender pursuant to U.S.S.G. §§ 4B1.1 and 4B1.2 because his conviction for threatening a federal official and his three prior convictions for mailing threatening communications and burglary no longer qualify as crimes of violence under any portion of the career offender definition. Movant correctly notes that the "residual clause" in U.S.S.G. § 4B1.2(a) is textually identical to the "residual clause" of the ACCA (18 U.S.C. § 924(e)(2)(B)(ii)). U.S.S.G. § 4B1.2(a) defines "crime of violence" as

27

"any offense under federal or state law, punishable by imprisonment for a term exceeding one year that – (A) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) is burglary of a dwelling, arson, or extortion, involves the use of explosive, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" U.S.S.G. § 4B1.2(emphasis added). The italicized portion above is known as the "residual clause" of Section 4B1.2. Identical to Section 4B1.2(a)'s "residual clause," the ACCA's "residual clause" defines "violent felony" as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Based upon the identical definitions of "crime of violence" in Section 4B1.2(a)'s "residual clause" and "violent felonies" in the ACCA's "residual clause," Movant argues that Johnson applies retroactively and the "residual clause" of Section 4B1.2(a) of the Guidelines is unconstitutionally vague.

Although the United States has filed a Response asserting numerous reasons Movant's Johnson claim should be dismissed, the undersigned finds it unnecessary to consider such arguments. The issue concerning whether Johnson applies to the Guidelines has now been specifically addressed by the United States Supreme Court. On March 6, 2017, the United States Supreme Court held that the United States Sentencing Guidelines are not subject to a void for vagueness challenge under the Fifth Amendment in light of Johnson. Beckles v. United States, ___ U.S. ___, 137 S.Ct. 886, 197 L.Ed.2d 145 (2017). The Supreme Court specifically determined that the "residual clause" of Section 4B1.2(a) was not unconstitutionally vague because that "[u]nlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences." Id. The Supreme Court explained that the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," and thus are

not subject to a vagueness challenge. Id. Accordingly, Movant's argument that the holding of Johnson extends to his sentence as a career offender under the "residual clause" of the Guidelines is without merit. Beckles clearly forecloses Movant's argument that he was improperly determined to be a career offender because his prior convictions no longer qualify as "crimes of violence" in light of Johnson. For reasons more fully explained below, Movant fails to present any other basis for finding that his underlying offense or predicate offenses do not satisfy the criteria for career offender status that can be considered appropriately asserted in the above proceedings.

**4.    Validity of Plea:**

In his *pro se* Section 2255 Motions, Movant argues that his guilty plea was entered into under "threats and duress." (Civil Action No. 5:14-03232, Document No. 422, 423, 426, 455.) In support, Movant alleges that Mr. Campbell "made it clear to me that if I did not sign [the plea agreement], that I would get no less than 22 years and that he had spoken to the president of the Pegan's chapter, Jessie Moore, and because I had used the Pagan's name, that I would live in hell for that for 22 years." (Id.) In Response, the United States argues that Movant's plea agreement was entered into knowingly and voluntarily. (Id., Document No. 476, pp. 15 - 16.) The United States notes that the District Court conducted the hearing pursuant to the provisions of Rule 11, went over the entirely of the plea agreement with the defendant, went over his constitutional rights, and specifically questioned Movant as to the voluntariness of the agreement. (Id.) The United States contends that the District Court properly determined that Movant's plea was voluntary. (Id.)

First, the undersigned finds that Movant's claim that his plea was involuntary is procedurally barred. Although Movant executed an appellate waiver as part of his plea

agreement, such a waiver is only enforceable if it is entered into voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Thus, a claim of involuntary plea could have been raised on direct appeal. Movant, however, did not raise the issue on appeal. Movant has not shown and cannot show good cause for failing to do so and that prejudice has resulted. The Court notes that during the Plea Hearing, the District Court specifically advised Movant as follows:

> THE COURT:          Do you further understand that you may have a right to appeal your conviction, or that is, the nature of your guilty plea, if you believe that your guilty plea was unlawful or involuntary or that there was some other fundamental defect in a proceeding that was not waived either by your plea agreement or by your plea of guilty?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:          Do you understand that?
>
> THE COURT:          Yes, Your Honor.

(Criminal Action No. 5:11-cr-00124, Document No. 404, p. 26.) Further, Movant cannot show that a miscarriage of justice would result from the refusal of the Court to entertain the collateral attack. Although Movant disputes the validity of his plea agreement, he does present clear and convincing evidence that he is actually innocent of his charge which is the basis for his conviction. Movant appears to argue that he is actually innocent based upon the following: (1) Movant could not have actually used force because he was incarcerated at the time of the alleged offense; and (2) Movant mailed the letter as a "hoax." The undersigned finds the above arguments to be with merit. First, the use of force is not a required element for a conviction for threatening to kidnap and assault a Federal Bureau of Prisons law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B). See 18 U.S.C. § 115(a)(1)(B). Second, the record clearly contradicts Movant's self-serving claim that he only intended the letters as a "hoax." (Criminal

Action No. 5:11-cr-00124, Document No. 404, pp. 15 – 20.) The Court, therefore, finds that the above error is procedurally barred.

Even considering Movant's claim on the merits, it is clear from discussion below that his plea was intelligent and voluntary.[4]

**5.    Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's

---

[4] The undersigned will discuss the validity of Movant's plea within his claim of ineffective assistance of counsel.

tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

### A.    Counsel alleged ineffectiveness regarding involuntary and unknowing plea.

First, Movant argues that his plea was involuntary because Mr. Campbell informed Plaintiff that he faced a possible sentence of 22 years of incarceration if convicted on all charges and warned that the Pegan's could make his life in prison "hell." (Civil Action No. 5:14-03232, Document No. 422, 423, 426, 455.) Second, Movant argues that his plea was made unknowingly

32

because Mr. Campbell misrepresented Movant's sentencing exposure. (Id.) Specifically, Movant explains that Mr. Campbell represented to Movant that if he signed the plea agreement, Mr. Campbell could get Movant "six years at Butner." (Id.) A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution. See for example Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)(A defendant challenging the voluntariness of a guilty plea may assert a claim under Brady that the prosecution withheld evidence favorable to the defendant and material to guilt or punishment when defendant requested it.).

Based upon a review of the record, the undersigned finds no evidence supporting Movant's claim that he was coerced into signing the plea agreement. First, the undersigned finds that counsel's act of advising Movant as to the possible consequences and potential sentencing exposure of not accepting the plea agreement was not a threat or coercion. If convicted on all charges contained in the Second Superseding Indictment, Movant faced a possible statutory sentence of 120 years. Thus, Mr. Campbell's prediction of a possible sentence of 22 years was not a "threat." During the Plea Hearing, the District Court thoroughly questioned Movant regarding whether his decision to plead guilty was voluntary. (Criminal Action No.

5:11-cr-00124, Document No. 404, p. 37.) Specifically, the District Court questioned Movant as follows:

| THE COURT: | Has anyone tried to force, coerce, intimidate, put pressure on you, or talk you into pleading guilty against your will? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Other than this plea agreement, has anyone made you any promises to induce you to plead guilty or told you anything different than what I said to you this morning? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Is pleading guilty your own idea? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | And are you pleading voluntarily and of your own free will? |
| THE DEFENDANT: | Yes, ma'am. |

(Id.) Movant further acknowledged that he was pleading guilty because he was in fact guilty of the charge. (Id., p. 7.)

Next, the record in this case reflects that Movant's guilty plea was voluntary and made with full knowledge of its consequences. The written plea agreement provided that "Mr. Riggleman will plead guilty to Count One of said indictment, which charges him with a violation of 18 U.S.C. § 115(a)(1)(B) (Threatening to Kidnap and Assault a Federal Officer)." (Criminal No. 5:11-00124, Document No. 322, p. 2.) The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (Id.) Specifically, the plea agreement stated that Movant faced a term of "imprisonment for a period of up to 10 years." (Id.) The plea agreement further stated at Paragraph 13 that "[t]he matter of sentencing is within the sole discretion of the Court." (Id., p. 5.) During the Plea Hearing, the District Court questioned

34

Movant as follows regarding sentencing:

THE COURT:        Do you understand that by pleading guilty you expose yourself to a maximum term of imprisonment of ten years?

THE DEFENDANT: Yes, Your Honor.

\* \* \*

THE COURT:        Have you discussed with Mr. Campbell the application of the United States Sentencing Guidelines to your case?

THE DEFENDANT: Oh, yes. Yes.

THE COURT:        And specifically you've discussed with him the career offender provision in the guidelines - -

THE DEFENDANT: Yes.

THE COURT:        - - also; is that correct?

THE DEFENDANT: Yes.

THE COURT:        Do you understand that I will not be able to calculate and consider the applicable advisory guideline range in your case until after the probation office prepares a Presentence Investigation Report and until after both you and the Government have had the opportunity to challenge the facts contained in the report?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        *Do you understand that I can impose a sentence that's different than any estimate that Mr. Campbell may have given you?*

THE DEFENDANT: *Yes, Your Honor.*

THE COURT:        Do you also understand that I'm required to calculate and consider that applicable advisory guideline range that I've told you about, I'm also required to considered the sentencing favors set forth in 18 U.S.C. § 3553(a), in trying to determine your appropriate sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        Mr. Riggleman, in paragraph 10 of your plea agreement the parties have agreed that the base offense level is 24. Do

35

you understand that I'm not bound by that calculation contained in your plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT:    Do you also understand that I'm not bound by any guideline range that we calculate, and that I can impose a sentence that's either less severe or more severe than that contained in the applicable advisory guideline range?

THE DEFENDANT: Yes, Your Honor.

(Id., pp. 22 – 25.)(emphasis added). Even assuming counsel was deficient by misrepresenting Movant's sentence, Movant was not prejudiced because the District Court specifically informed Movant that the Court was not bound by any estimated sentence predicted by counsel. (Id., p. 25.) Finally, Movant affirmed during the Plea Hearing that he was satisfied with representation from defense counsel. (Id., pp. 6 and 31.) "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221 - 222 (4th Cir. 2005). The undersigned finds that Movant's self-serving statement that counsel instructed Movant to lie so that his plea would be accepted is insufficient to constitute such extraordinary circumstances. Nothing in the record indicates that Movant's plea was unknowing, involuntary, or that trial counsel threaten or coerced Movant into pleading guilty. Based on the foregoing, the undersigned finds Movant's allegation that his plea was unknowing or involuntarily due to ineffective assistance of counsel is without merit.

**B.    Counsels' alleged ineffectiveness regarding pretrial motions:**

In his *pro se* Section 2255 Motions, Movant argues that Mr. Campbell and other appointed counsel were ineffective because all failed to adopt his *pro se* motions. (Civil Action

36

No. 5:14-03232, Document No. 422, 423, 426, 455.) Movant further contends that Mr. Campbell and all other appointed counsel ignored and neglected Movant's challenge to the appointment of the Special Assistant United States Attorney. (Id., Document No. 422, pp. 2 – 3, 14.) Movant alleges that his due process rights were violated because he was not provided a hearing or an opportunity to contest the appointment of a Special Assistant United States Attorney. (Id., Document No. 423, pp. 3 – 4 and Document No. 422, pp. 7 – 10, 13.)

To the extent, Movant argues that appointed counsel were ineffective in failing to adopt all *pro se* motions filed by Movant, such a claim is without merit. A movant must make specific allegations establishing reason to believe that, if the facts are fully developed, he is entitled to relief. United States v. Roane, 378 F.3d 382, 403 (4th Cir. 2004). Movant, however, fails to explain how trial counsel were ineffective in failing to adopt all *pro se* motions. Additionally, Movant fails to allege how counsels' above alleged failures resulted in prejudice. Finally, counsel cannot be determined ineffective for failing to argue meritless claims. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)(stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F.Supp. 724, 731 (E.D.Va. 1996)(holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument").

As to Movant's claims that Mr. Campbell never adopted "any" of his *pro se* motion and Movant was never provided a hearing or an opportunity to challenge the appointment of SAUSA Stevens, such claims are contradicted by the record. Mr. Campbell filed a motion to adopt Movant's *pro se* motions challenging the authority and appointment of SAUSA Stevens, which

was granted by the Court. (Criminal Action No. 5:11-00124, Document Nos. 254 and 270.) Specifically, Mr. Campbell adopted the following *pro se* Motions: (1) Movant's *pro se* Motion for Judicial Review of FOIA to the extent Movant was requesting that SAUSA Stevens produce documents evidencing her appointment as a Special Assistant United States Attorney; (2) Movant's *pro se* Motion to have New Appointed Attorney File Pretrial Motions and Suppression/Impeachment Motion to the extent Movant asserted that SAUSA Stevens "was an improper person to conduct grand jury proceedings;" (3) Movant's *pro se* Motion to Recuse to the extent Movant "request[ed] that the Court remove Ms. Stevens from the prosecution of this case because Ms. Stevens' appointment, among other things, has the appearance of impropriety in that Ms. Stevens works at the same prison where the defendant is incarcerated and is in a position to control the defendant's life in the institution and she has, at a minimum, a working relationship with the officers and staff at FCI Beckley;" (4) Movant's *pro se* Motion to Disqualify Ms. Stevens to the extent Movant argued that 28 U.S.C. § 543 is invalid because the United States Attorney has not shown a conflict of interest that would cause his staff not to be able to prosecute the case and there is an appearance of impropriety as to Ms. Stevens; and (5) Movant's *pro se* Motion to Suppress All Evidence Put Together by SAUSA Stevens arguing that SAUSA Stevens was improperly appointed and had no legal authority to present the case to the grand jury. (Id., Document Nos. 225, 227, 247, 249, 254, 258, 270.) The record further reveals that Magistrate Judge VanDervort conducted a hearing on January 8, 2013, concerning the above Motions and the issues disputing SAUSA Stevens' authority and qualification to represent the United States in prosecuting Movant. (Id., Document Nos. 271 and 272.) By Memorandum Opinion and Order entered on January 9, 2013, Magistrate Judge VanDervort denied the above motions after thoroughly addressing each. (Id., Document No. 271.) First, Magistrate Judge

VanDervort determined that SAUSA Stevens was qualified to represent the United States. (Id.) Specifically, Magistrate Judge VanDervort explained that SAUSA Stevens was appointed to her position pursuant to 28 U.S.C. § 543, and therefore, had authority under 28 U.S.C. § 515(a) to conduct any kind of legal proceeding which United States Attorneys are authorized by law to conduct. (Id.) Next, Magistrate Judge VanDervort noted the filing of documents evidencing SAUSA Stevens' appointment as a Special Assistant United States Attorney (Document No. 256). (Id.) Third, Magistrate Judge VanDervort determined there was no conflict of interest as a result of SAUSA Stevens' employment in the same agency as the person alleged to be the victim of Movant's criminal conduct. (Id.) Finally, Magistrate Judge VanDervort concluded there was no indication that SAUSA Stevens was acting "vindictively or maliciously in conducting Defendant's prosecution." (Id.) Based upon the foregoing, the undersigned finds that Movant's claims that counsel acted ineffective in failing to adopt any of his *pro se* motions and failing to challenge the appointment of SAUSA Stevens are without merit. Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be dismissed.

### C.     Counsel's alleged ineffectiveness regarding exculpatory evidence.

In his *pro se* Section 2255 Motions, Movant appears to contends that the trial counsel acted ineffectively because there was insufficient evidence to support his conviction for threatening to kidnap and assault a federal officer in violation of 18 U.S.C. § 115(a)(1)(B). (Civil Action No. 5:14-03232, Document No. 422, pp. 8 – 9.) Specifically, Movant complains that Mr. Campbell never "filed for any finger prints, hand writing analysis, DNA, forensic or scientific evidence." (Civil Action No. 5:14-03232, Document No. 422, pp. 8 – 9.) Movant appears to argue that such evidence could have proved his innocence. (Id.) Although Movant appears to

argue that he did not write the threatening letter, he goes on to argue in his Section 2255 Motions that he is innocent because the letters he wrote were a "hoax" -- not a threat. (Id.)

A review of the transcripts from the Plea Hearing reveals that the District Court thoroughly reviewed the charge to which Movant was pleading guilty. (Criminal Action No. 5:11-00124, Document No. 404, pp. 13 - 15.) Additionally, the District Court specifically described the essential elements of the offense which the Government would be required to prove beyond a reasonable doubt to convict Movant of the charge. (Id.) The District Court specifically advised Movant that "[t]he threat must be true; that is, something that an ordinary, reasonable recipient who is familiar with the context of the threat would interpret as a threat and not something that's idle or carless talk, exaggeration, or something said in a joking manner." (Id., p. 14.) Movant acknowledged that he understood the charge contained in the Indictment and the essential elements of the offense. (Id.) Movant further agreed to the Stipulation of Facts attached to the Plea Agreement and acknowledged that he committed the essential elements of the offense contained in the Indictment. (Id., pp. 13 - 20.) Specifically, the District Court inquired as follows:

> THE COURT: Tell me briefly, in your own words, what it is you did that makes you guilty of violating that provision.
>
> THE DEFENDANT: It's been like two years ago; I can't exactly remember everything.
>
> THE COURT: Uh-huh.
>
> THE DEFENDANT: But the letter was written as just because I was angry and mad and - - (Mr. Gregory Campbell and the defendant confer off the record) yeah, Mr. Snow - - I had asked for protection because another inmate had been the one that had threatened me with the Pagans motorcycle gang stating

that my son and my wife and basically we was all three going to be harmed, and - -

(Mr. Gregory Campbell and the defendant confer off the record)

THE DEFENDANT: Yeah, he wrote me up and put me in solitary confinement for threats because I asked for protection not to be placed around this inmate and to not have this - - for me to not be put in a situation to where I'd be in a situation to stab this inmate.

THE COURT: This officer wrote you up; is that correct?

THE DEFENDANT: Yeah, and I was in fear of my life because of this other inmate. So this officer writes me up and put me in lockup, solitary confinement, where this inmate is at.

* * *

THE DEFENDANT: Yeah, I was mad and wrote the letter.

THE COURT: And in the letter did you in fact threaten the officer?

THE DEFENDANT: Yeah.

THE COURT: And was that threat in retaliation for his having written you up, Mr. Riggleman?

THE DEFENDANT: Yes. It was - - I retaliated against him in the same way that the inmate was threatening me.

THE COURT: Yes, sir.

THE DEFENDANT: I threatened him because I was very angry at him, because it was like, hey, I'm asking for - - I'm asking for protection and this officer, that was his duty and his job to protect me. And what was - - he was clearly ignoring his duty and me. I've never had - - I've never had no write-ups, no problems. I was so much looking for my future. I was 19 months from going home at this time.

THE COURT: What did you threaten to do to the officer in the letter?

41

THE DEFENDANT:    I really didn't mean none of it, I mean, but I threatened to - - I threatened what was it, something to cut his eyelids off and make him watch his son OD on crack, some of the same threats that was made to me and my wife and son.

THE COURT:    When you threatened him you said that you were angry; is that correct?

THE DEFENDANT:    I think maybe - - it's - - it's been a while since I've read it. Did I? I don't know. I can't remember.

THE COURT:    Let me ask you this, Mr. Riggleman - -

THE DEFENDANT:    Yeah.

THE COURT:    - - when you wrote the threat you did it in retaliation and you were angry - -

THE DEFENDANT:    Yes.

THE COURT:    - - is that correct?

THE DEFENDANT:    Yes. Yes.

THE COURT:    And don't let me put words in your mouth. Is that correct?

THE DEFENDANT:    Yes, ma'am.

THE COURT:    So at the time that you made the threat you meant it; is that also correct?

THE DEFENDANT:    Actually, at the time, yeah.

THE COURT:    All right.

THE DEFENDANT:    But that was like a week later it was like, okay, you know, wow, I'm not really - - not even a week later, I was just venting, blowing off steam.

THE COURT:    So you're saying - - and I want the record to be clear, and don't let me put words in your mouth. As I understand it, you intended it at the time, and maybe later after some reflection you thought better of it, but when you wrote it, when you threatened the officer, you were angry, you did it

42

|                    | in retaliation, and you meant what you said. Is that correct? Or intended what you said? |
| --- | --- |
| THE DEFENDANT: | Yes. But would I have ever carried through with it? No, I would never have carried through with it. I mean, in my life I've had some - - |
| THE COURT: | You understand when we communicate threats like that, the person who is the recipient of it doesn't always know whether we are going to carry through with it, though? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | Right. |

* * *

|                    |   |
| --- | --- |
| THE COURT: | All right. But you did this because the officer had written you up? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | You threatened him in the letter? |
| THE DEFENDANT: | I felt - - yeah. I felt threatened, so I'm going to threaten him back. |
| THE COURT: | And when you threatened him, at that time you intended what you threatened; is that correct, sir? |
| THE DEFENDANT: | Yeah. |

(Id., pp. 15 - 20.) Thus, Movant specifically admitted to writing the threatening letter during his Plea Hearing. As stated above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221 - 222. Thus, there is no indication that Movant was prejudiced by counsel's alleged failure to request "finger prints, hand writing analysis, DNA, forensic or scientific evidence." Based on the foregoing, the

undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be dismissed.

**D.    Counsel's alleged ineffectiveness based on bias.**

In his *pro se* Section 2255 Motions, Movant concludes that Mr. Campbell had a personal relationship or feeling towards District Judge Berger because "as soon as [he] made remarks and statements about this district judge, this is when [Mr. Campbell] got offensive and submitted a motion to withdraw." (Civil Action No. 5:14-03232, Document No. 422, pp. 8 – 9.) Movant's above allegation is at most speculative. Further, the record reveals that Mr. Campbell represented Movant through his direct appeal. In Movant's direct appeal, Mr. Campbell did assert a claim of that District Judge Berger was not neutral or impartial. Moreover, as determined by the Fourth Circuit, there is no evidence of any bias or impartiality by District Judge Berger. Therefore, it is respectfully recommending that Movant's above claim of ineffective assistance of counsel be dismissed.

**E.    Counsel's alleged ineffective regarding denial of acceptance of responsibility.**

Finally, Movant complains that Mr. Campbell was ineffective when he did "nothing but agree with the court when the judge denied this petitioner the acceptance of responsibility." (Civil Action No. 5:14-03232, Document No. 422, pp. 2 and 13.) A review of the record, however, contradicts Movant's allegation that counsel failed to object to the denial of a sentencing reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). (Criminal Action No. 5:11-cr-00124, Document No. 382, pp. 52 – 53.) Specifically, the record reveals that the Probation Officer did not recommend a reduction for acceptance of responsibility based on the following:

\* \* \*

172.    Subsequent to his guilty plea hearing, Elisha Riggleman filed a
*Declaration* on March 8, 2013. In his *Declaration*, Mr. Riggleman stated
that the threatening communication sent to Michael Snow was just a hoax.
The defendant advised that when asked during his plea hearing on January
25, 2013, if he meant to do it, he said, "Yes." However, Mr. Riggleman
explained that his answer meant that the intention of the threat was a hoax.
The defendant also stated that he believes punishment in addition to
sanctions imposed by the Bureau of Prisons for his conduct is double
jeopardy.

173.    Although Elisha Riggleman entered a guilty plea in a timely manner and
admitted the essential elements of his offense of conviction during the plea
colloquy, the probation officer believes statements made in his
*Declaration* filed subsequent to the plea hearing are not consistent with
acceptance of responsibility. In addition, Application Note 4 to USSG §
3E1.1 advises that conduct resulting in an enhancement under USSG §
3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily
indicates that the defendant has not accepted responsibility for his criminal
conduct.

* * *

(Id., pp. 26 - 27.) As stated above, counsel did object to the recommended denial of a reduction

for acceptance of responsibility. (Id., pp. 52 – 53.) Specifically, Mr. Campbell noted that Movant

entered a plea of guilty, admitted to the Judge that he was guilty, admitted to the elements of the

offense, and saved the Government the time and expense of trial. (Id.) Mr. Campbell further

noted that the mental evaluation conducted by the BOP revealed that Movant suffered from

metal health issues, which made it difficult for Movant to take responsibility for his own actions.

(Id., Document Nos. 372 and 382.) Therefore, Mr. Campbell argued that Movant should not be

penalized for his mental illness and he should receive a reduction for acceptance of

responsibility. (Id.) During the Sentencing Hearing, Mr. Campbell continued to assert the

foregoing arguments in support of a reduction for acceptance of responsibility. (Id., Document

No. 402, pp. 10 – 14.) Therefore, Movant's claim that Mr. Campbell was ineffective in failing to

argue for a reduction for acceptance of responsibility is clearly without merit. The undersigned,

therefore, respectfully recommends that Movant's able claim of ineffective assistance of counsel be denied.

**6.      Error in Sentencing/Violation of Due Process and Confrontation Clause:**

In his *pro se* Section 2255 Motions, Movant challenges the validity of his sentence, argues that his due process rights were violated, and argues that he was denied Sixth Amendment right to confront witnesses. (Civil Action No. 5:14-03232, Document Nos. 422, 423, 426, 437, 455, 486.) As to sentencing, Movant argues that the District Court erred in applying the career offender enhancement and denying him a reduction for acceptance of responsibility. (Id.) As to his due process rights, Movant alleges that such were violated because he was denied a hearing to contest the appointment of a Special Assistant United States Attorney.[5] (Id.) As to his right to confront witnesses, Movant argues that the United States failed to provide him with the names and contact information for the alleged victims.[6] (Id.)

The undersigned notes that by his written Plea Agreement, Movant agreed to waive his rights to appeal his conviction and sentence directly and challenge them under Section 2255 except on grounds of ineffective assistance of counsel. (Criminal No. 5:11-00124, Document No. 322, p. 5.) It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); Lemaster, 403 F.3d at 220. "To determine whether a waiver is knowing and intelligent, this court examines 'the totality of the

---

[5] For the reasons more fully discussed above, Movant's claim that he was not allowed to challenge the appointment of SAUSA Stevens is clearly contradicted by the record.

[6] Movant argues that the United States failed to provide him with the names and contact information for the wife and child of the Federal Correctional Officer. As part of Movant's Plea Agreement, the United States dismissed the charge of threatening to murder and assault the wife and child of the officer in violation of 18 U.S.C. § 115(a)(1)(A).

circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement.'" United States v. Johnson, 480 Fed.Appx. 229, 230 (4th Cir. 2012)(citation omitted). Generally the waiver is valid and enforceable if a Court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy. Id.

The undersigned finds that Movant's plea agreement and appellate waiver were voluntary and intelligent. In his *pro se* Motions, Movant does not argue that his *waiver* was made unknowingly or unintelligently. A review of the plea agreement further reveals that the waiver was clear and unambiguous. Specifically, the plea agreement stated, in pertinent part, as follows:

> Mr. Riggleman knowingly and voluntarily waives the right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742. The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742.

> Mr. Riggleman also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

> The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(Criminal Action No. 5:11-00124, Document No. 322, p. 5, ¶ 11.) The undersigned finds no indication that Movant did not understand the terms and consequences of signing the plea agreement. Considering Movant's educational background, the record reveals that Movant obtained his G.E.D. and completed a few college credits. (Id., Document No. 382, p. 43 and Document No. 404, p. 3.) Additionally, Movant's criminal history reveals that he is experienced

with the criminal justice system. (<u>Id.</u>, Document No. 382, pp. 29 - 36.) During the Plea Hearing, the terms of the plea agreement were thoroughly reviewed with Movant and he acknowledged that he understood the terms and consequences of signing the plea agreement. (<u>Id.</u>, Document No. 404, pp. 9 - 38.) Further, the District Court thoroughly explained the appellate waiver to Movant during the Rule 11 colloquy and Movant acknowledged that he understood and agreed to the waiver. (<u>Id.</u>, pp. 26 – 28.) Based on the foregoing, the undersigned finds that Movant's appellate waiver was knowingly and intelligently. Thus, Movant waived his right to challenge the validity of his conviction or sentence. Accordingly, the undersigned respectfully recommends that the District Court determine that Movant's above *habeas* claims are precluded by his appellate waiver.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Movant's *pro se* Motions for Default Judgment (Document Nos. 442 and 443), **DENY** Movant's pro se Motion for Voluntary Dismissal (Document No. 496), **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by A Person in Federal Custody Pursuant to 28 U.S.C. § 2255 and Amended Section 2255 Motions (Document No. 422, 423, 426, 437, 455, 486), and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title

48

28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant and counsel of record.

Date: April 6, 2018.

Omar J. Aboulhosn
United States Magistrate Judge